THE COLORADO LOAN & TRUST COMPANY ET AL., PLAINTIFFS IN ERROR, v. THE GRAND VALLEY CANAL COMPANY, DEFENDANT IN ERROR.

1. FORGERY.

Forgery is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability.

2. EQUITABLE ESTOPPEL.

Where one, by his words or conduct, willfully causes another to believe a certain state of things and induces him to act on that belief so as to alter his previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.

*Error to the District Court of Arapahoe County.*

THIS was a suit in equity brought by the defendant in error to enjoin the sale, quiet title and cancel conveyances of certain lands and water rights in Mesa county. The Grand Valley Canal Company was a corporation operating an irrigating canal, selling lands, water rights, etc. It is alleged in the complaint that on the first day of Dec., 1884, defendant in error made and delivered to one Lucius Cost deeds purporting to convey the lands in controversy, together with certain water rights; that on the same date, Cost conveyed the same property in trust to the Colorado Loan & Trust Company, as trustee, to secure the sum of $1,000 borrowed or to be borrowed. The trust deed was filed for record on the 3d day of December, 1884. G. P. Bissell & Co. of Hartford, Conn.,

bought the notes for $1,000 made by Cost, secured by the deed of trust above mentioned, the money going to the use of The Grand Valley Canal Company. On the 1st of November, 1884, a deed of trust was made by The Grand Valley Canal Company, conveying all its property, including the land in controversy, to Gustavus F. Davis, trustee, to secure bonds to the amount of $200,000, issued by the company and put upon the market for sale. Whether or not they were all sold we are not informed, but a part, (amount not shown,) were purchased by The Travelers Insurance Company. Default having been made by The Grand Valley Canal Company The Travellers Insurance Company on the 9th day of March, 1888, brought a suit to foreclose. On July 21, 1888, a decree of foreclosure was entered, which was followed by a sale of the property, which was purchased by The Travelers Insurance Company, which afterwards sold and conveyed the property to The Colorado Loan & Trust Company. Bissell & Co. attempted to enforce their lien upon the land in question to satisfy the Cost notes, and this suit was instituted for the purposes above stated. The Grand Valley Canal Company was the successor of The Grand River Ditch Company. In regard to the trust deed of Bissell & Co. it is alleged in the complaint: "That on the 1st day of December, 1884, pretended conveyances, of the property in controversy were executed by The Grand River Ditch Company to one Lucius Cost. Plaintiff is informed and believes that the conveyances were a forgery. That some one, not authorized, signed the name of T. C. Henry, the president of The Grand River Ditch Company, to the deeds, and that the deeds were never acknowledged by Henry, and that the deeds were not the deeds of The Grand River Ditch Company."

The answer fully denies the allegation of forgery of the deeds, etc., and alleges: " That C. P. Bissell & Co. in good faith paid out the money on the notes secured by the deeds of trust, executed by Lucius Cost to The Colorado Loan & Trust Company. That the notes of said Cost were negotiated and sold to said Bissell & Co. by T. C. Henry, the presi-

dent of The Grand River Ditch Company, and that T. C. Henry, as such president represented to Bissell & Co. that all the deeds were good and valid, and that Bissell & Co. relied upon such representation."

A trial was had upon the issue involved, and a large amount of testimony taken.    On the 22d of January, 1891, the cause was submitted.    On the 26th of January, 1891, there was a finding for the plaintiff and a decree finding that Cost had no title, and the trust deeds made by him were invalid and void, and allowing the injunction.    To reverse such decree a writ of error was sued out to this court.

Mr. J. P. BROCKWAY, for plaintiffs in error.

Mr. WM. R. BARBOUR, for defendant in error.

REED, J., after stating the case, delivered the opinion of the court.

It will be observed that only one issue is made by the pleadings, viz., the validity of the deed from The Grand Valley Canal Company to Cost.    The validity of the trust deed, made by Cost, is dependent upon his title, hence, only the validity of his title is involved.    By the pleading and the conduct of the entire case, it appears to be conceded that the Cost security would, if valid, be prior to and take precedence of that of the other parties, consequently, this issue of validity is the only one to be determined.    There is another insisted upon in argument, but not presented by the pleading, which will be examined hereafter.

The allegation in the complaint is, " that the conveyances were a forgery; that some one not authorized signed the name of T. C. Henry, the president of the Grand River Ditch Company, to the deeds, and that the deeds were never acknowledged by Henry, and that the deeds were not the deeds of The Grand River Ditch Company."    A novel and very peculiar case is made in evidence.    It is not pretended

that Cost or anyone in his interest committed the forgery, or was guilty of any irregularity whatever in the entire transaction, or during his life had any knowledge of the present supposed irregularities. It is conceded that the land was regularly purchased by him from the Ditch Company and an agreement made by it to convey to him. Taking the case as claimed to have been made by the evidence and we have the anomalous one of the officers and managers of a corporation forging a deed to its own property to close a legitimate sale and execute a contract, and setting up its own fraud to defeat its conveyance. The fraud attempted to be proved, it will readily be seen, was not the fraud of the grantee upon the company but the fraud of the company upon its grantee, who acted in good faith—neither participated in nor had knowledge of it.

A brief examination of the evidence of plaintiff in error and of the officers of The Grand Valley Canal Company when called for the defense is necessary. T. C. Henry was president of The Grand Valley Canal Company, the defendant; when called by the plaintiff in error, he testified nothing whatever in regard to the supposed forgery of his name to the deed—a fact that should not pass without comment. It was the only issue in the case, and, if a forgery of his name, he was certainly the most competent witness to establish the fact, yet in such examination the subject of the forgery was studiously avoided. When called and examined by the defense, he stated: that he, as president of the defendant, made the contract with Cost for the sale and conveyance of the land to him. " I don't recollect particularly the time and circumstances under which those particular deeds were executed. I remember well the agreement and transaction that culminated in that transaction. Perhaps if I were to see the deeds I should recall some more of the circumstances connected with it." He had not seen the original deeds of the land since they were executed and delivered. The deeds for water rights from the company to Cost, which were a part of the same transaction, and were shown him, he iden-

tified as having been executed by him.   He testified : " My present recollection is that—in fact, I know that it was my practice to sign papers, when I was an officer, in blank and leave them in possession of a notary public, to be used as occasion might require ; " and in regard to those particular deeds, " My present recollection is that I left deeds probably signed many months before this time, in the possession of the notary who was in the office, Mr. Rees, in his presence."

" Q. Do you know who prepared the deeds that you made in this matter ?   A. No, sir ; without looking at them.

" Q. Did you do it ?   A. No, sir, I signed them in blank."

H. J. Aldrich, secretary and treasurer of the company, on behalf of the plaintiff :

" Q. Did you have authority to sign Mr. T. C. Henry's name, the president, to deeds in his absence ?   A. I did.

" Q. And were you accustomed to sign deeds in his absence ?   A. I did such things on some occasions.   It didn't amount to a custom, but I did it sometimes.

" Q. Now, when you would sign Mr. Henry's name to deeds in his absence, what would be done in reference to having them acknowledged ?   A. Well, I don't recall any instance when I signed his name, but still I think it was done in some instances.

" Q. Now, when you signed Mr. Henry's name as president to an instrument, would you hand it to Mr. Rees, and would he certify that it was acknowledged before him as a notary public ?   A. I don't know whether he did or not, and I don't know as I ever handed any to him."   When called by the defendant he testified :

" Q. I will ask you to look at the signature to these three instruments, and say whose signature it is, if you know? (Three papers handed to witness.)   A. I should say they were the signature of T. C. Henry.

" Q. How well are you acquainted with T. C. Henry's signature; how many times have you seen it ?   A. A very great number of times.

" Q. Have you seen him sign his name a very great num-

ber of times? A. Yes, sir; I am as familiar with it as I am with my own.

" Q. And you say that this signature is the signature of T. C. Henry, do you? A. That would be my judgment.

, " Q. I believe you said that in some cases you were authorized by Mr. Henry to sign his name in his absence? A. I was.

" Q. Do you remember the transaction of the giving of the deeds to Lucius Cost by The Grand River Ditch Company, which has been mentioned here? A. Yes, sir.

" Q. Do you remember about the negotiation of the notes and deed of trust given by Lucius Cost to Messrs. Bissell & Co., the defendants here ? A. I do.

". " Q. Did you take part in that negotiation? A. I did.

" Q. On whose behalf were you acting in negotiating those notes and selling them to Bissell & Co.? A. In behalf of The Grand River Ditch Company.

" Q. When the notes were negotiated, who received the money? A. The Grand River Ditch Company.

" Q. What consideration was moving from The Grand River Ditch Co. to Lucius Cost in the warranty deeds to the land in controversy, that were delivered to him? A. The title to the land.

. " Q. What was the consideration moving from Cost to The Grand River Ditch Company ? A. The trust deed.

" Q. Anything else? A. And the title, if I understand that question.

" Q. In other words, what did Lucius Cost pay The Grand River Ditch Company for this land; what did he give for it ? A. I don't remember what the consideration was. You mean how much it was?

" Q. In other words, what did the Grand River Ditch Company receive from him? A. They received a deed of trust.

. " Q. Well, what else besides the deed of trust; what goes with the deed of trust, in other words? A. Why, a note and deed of trust.

" Q. They received Mr. Cost's two notes and the deeds of trust?   A. Yes.

" Q. And you have already stated, as I remember, when those notes were negotiated, the money was received by The Grand River Ditch Company?   A. Yes, sir.

" Q. Do you remember how the deeds were delivered to Lucius Cost?   A. I do not.

" Q. You know that they were delivered, however?   A. I know that they were delivered; yes.

" Q. Do you know, Mr. Aldrich, whether or not any other officer or director of The Grand River Ditch Company knew of the making of these deeds to Lucius Cost, and the loaning of this money, and the reception of it from Bissell & Co. for the benefit of The Grand River Ditch Company, as you have stated?   A. I knew Mr. Henry and Mr. Coulson.

" Q. Were Mr. Henry and Mr. Coulson both directors of The Grand River Ditch Company?   A. They were.

" Q. And Mr. Henry was its president?   A. He was."

Mr. Barrows, who was a clerk in the loan department of the defendant in error, was called, and testified for both par-, ties, in effect, that he, as clerk, prepared all the deeds in question, four or five in number, and delivered them to Mr. Aldrich, the secretary ; also, prepared the deed of trust from Cost upon the land and the notes ; also, that he filled up the application for a loan.   The deeds testified to embraced those to water rights conveyed at the same time from the company to Cost.   Here his testimony upon this part of the controversy stops.   He does not say whether the name of Mr. T. C. Henry had been previously written by Henry on the blanks· used, or whether the signature was blank, nor does he testify who signed the name of Mr. Henry.   The impression from his testimony would be that the name of Mr. Henry was written by Mr. Aldrich or some one else, and not by Mr. Henry, but here is a clash between his testimony and that of Henry.   Barrows testifies to the making out by him of all the papers, water deeds included, and that they were all in the same condition when delivered to Mr. Aldrich, the secre-

tary, while Henry upon the stand has sworn to the deeds to the water rights and sworn that his name to them was written by himself; the deed to the land was not there. Taking all the testimony, it is perhaps unnecessary to say, that it fails to show the perpetration of any crime or fraud or any attempt or intention to perpetrate either. There is an absolute lack of proof of intention, which is an indispensable element. If the evidence establishes anything, it is of an irregular manner of transacting business, a want of technical compliance with the requirements of the law in regard to the conveyance of real estate. We do not wish to be understood as intimating that strict compliance with the statutory requirements can be dispensed with, and that if the supposed facts and irregularities had been satisfactorily established they would not have vitiated the conveyance. But here we have the anomaly of three different officers of a corporation who had exclusive control of the conveyancing, testifying, when called, to discredit their own conveyance to three different and incompatible sets of facts in the same transaction and establishing neither.

Forgery is defined to be " the fraudulent making or alteration of a writing, to the prejudice of another man's rights." 3 Greenlf. Ev. § 103.

" A false making or making *malo animo* of any written instrument for the purpose of fraud and deceit." 2 Russ. Crim. Law, 318; *Com'wlth v. Ayer*, 3 Cush. (Mass.) 150.

" To constitute this offense it is also essential that there be an intent to defraud." 3 Greenlf. Ev. 103 ; 4 Black. Com. 247.

" It is the false making or materially altering, *with intent to defraud*, of any writing, which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability." 1 Bish. Crim. Law, § 572.

It will readily be observed that there was no forgery—the intention to defraud was entirely lacking, which is the very basis of the crime. The property conveyed was that of the party who is charged with the forgery. The owner cannot

be guilty of forgery in the execution of a conveyance of his own property for the benefit of another in pursuance of a legitimate contract of sale. It may have been irregular, lacking in legal formalities, which would have avoided it if challenged by a *bona fide* purchaser, without notice of its existence, and that is the most that could be said, even if the plaintiff in error had fully established the irregularity attempted.

The testimony of the officers of defendant conclusively shows that Cost's application for the loan was made to The Colorado Loan & Trust Company direct; that Cost was not to receive the proceeds of the loan; that The Grand Valley Canal Company was to be the beneficiary through the plaintiff in error, and that the proceeds of the loan went through the office of the plaintiff in error.

Mr. Henry said: "I don't now recollect whether the notes were sent to me, or sent from the office of The Colorado Loan & Trust Company direct to Mr. Bissell; but the applications were sent to me, which stated the basis of the loan, and I negotiated for the loan as called for in the application." This fully fixes these important facts: First, the knowledge of the plaintiff in error of the entire transaction; second, its participation in securing the loan, giving credit to the securities and getting the money from Bissell & Co.; third, the participation of the officers of the defendant in error, and that its president personally negotiated it, and, of necessity, indorsed and vouched for its legitimacy and validity, consequently, the plaintiff cannot claim to have been an innocent purchaser under the other trust deed without knowledge of the lien of Bissell & Co., nor can the defendant in error set up its own irregularities to defeat a security that both plaintiff and defendant were connected with, and placed upon the market and received the proceeds of.

It is contended in argument that prior to the conveyance to Cost The Grand Valley Canal Company had conveyed all its property, including the land conveyed to Cost in trust, to secure the payment of $85,000 borrowed; that such indebt-

edness remained unpaid and became a part of the $200,000, the subsequent loan, which was to that extent a renewal, 'and being such took precedence of the Cost conveyance. No such allegation is contained in the pleading nor any issue. The allegation is that the property was conveyed to Davis (trustee) " to secure the payment of its bonds in the sum of $200,000." Another difficulty arises. If the contention could prevail, it could only be effective as to the $85,000. The Cost claim could not be subrogated to the entire $200,000, as attempted in argument. Neither in pleading nor argument is there an effort made to make the $85,000 superior to, or to separate it from, the remaining $115,000, so as to give it precedence of the Cost claim.

The equitable principle contended for and sustained by the numerous authorities cited is clearly correct, where it can be invoked and made applicable, but in our view of the present case, it cannot avail under either the facts or pleading.

We conclude, first, that the plaintiff in error, having had full knowledge of the Cost transaction, and having participated in the placing of the security with Bissell & Co. and in establishing its regularity, is precluded and estopped to assert its invalidity and give its own claim precedence. The application for the loan was made by Cost directly to the plaintiff in error; the defendant in error was to and did receive the proceeds through the plaintiff in error. The legal title of Cost was conveyed to the plaintiff in error to secure the notes. The placing of the security with Bissell & Co. was done by plaintiff in error through the agency of Mr. Henry, who testified to the fact, but did not recollect whether the securities were sent by plaintiff to him or directly to Bissell & Co. The proceeds went in the first instance directly to the plaintiff in error. · It does not appear in evidence, but the notes and trust deed having been made directly to the plaintiff, it is evident the notes could only have passed to Bissell & Co. by the indorsement or assignment of plaintiff. These being the facts there is no question of the applicability of the law of estoppel, " *estoppel in pais*," or " equitable es-

toppel." The rule as deduced from all the authorities, and which is as well established as any general rule of law, is " *Where one, by his words or conduct, willfully causes another to believe a certain state of things, and induces him to act upon that belief, so as to alter his previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.*"

The leading case is *Pickard v. Sears*, 6 Adolph. & E. 469. See also, *Heane v. Rogers*, 9 Barn. & Cress. 576; *Graves v. Key*, 3 Barn. & Ad. 318; *Keate v. Phillips*, 18 L. R. Ch. Div. 577.

The American rule as stated in *Branson v. Wirth*, 17 Wal. 42, is in effect the same. Mr. Justice Bradley states it, " If one person is induced to do an act prejudicial to himself in consequence of the acts or declaration of another on which he had a right to rely, equity will enjoin the latter from asserting his legal rights against the tenor of such acts or declarations." The same rule, in effect, though differing somewhat in phraseology, had been applied in the courts of every state. The application of this well settled principle would estop the plaintiff in error from asserting the invalidity of the security in the hands of Bissell & Co., regardless of the finding as to title in the transactions between defendant in error and Cost.

Second. That no case was made by the evidence in regard to the conveyance by it to Cost to invalidate his title and the security by him made. If fraudulent, they were the frauds of the company, of which he had no knowledge and in which he in no way participated, and certainly could not invalidate the security in the hands of Bissell & Co., where the company had placed it, and had received and appropriated the proceeds to its own use. It follows that the district court erred in finding the securities executed by Cost void in the hands of Bissell & Co.

The decree will be reversed and the cause remanded.

*Reversed.*